CRUSADER AS CUSTODIAN FOR STRATEGIC MUNICIPAL LIEN INVESTMENTS, LLC, Appellant,

v.

Charles E. HEYWARD,
et al., Appellees.

No. 09–CV–1414.

District of Columbia Court of Appeals.

Submitted Feb. 1, 2011.

Decided May 26, 2011.

Donald R. Dinan, Washington, DC, filed a brief for appellant.

Charles Heyward filed a brief pro se.

Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, with whom Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Mary L. Wilson, Senior Assistant Attorney General, were on the brief for the District of Columbia.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

This appeal comes to us from the trial court's dismissal of a complaint to foreclose on Charles Heyward's right of redemption to his property, filed by appellant Crusader as Custodian for Strategic Municipal Lien Investments, LLC's ("Crusader"). Crusader seeks reversal of the trial court's decision and a case remand with instructions that the complaint for foreclosure be reinstated. We affirm.

## I.

Crusader, the assignee of a water and sewage lien on Heyward's property, contends that the court erred in dismissing its complaint because the instant foreclosure action may be brought under D.C.Code § 34–2407.02 (2001), and D.C.Code § 47–1303.04 (2001). We disagree.

Heyward purchased real property in the northeast quadrant of the District of Columbia in 1992. In June 1996, the Water and Sewer Administration of the District of Columbia Department of Public Works ("WSA") issued a Certificate of Delinquent Water/Sewer Charges to Heyward because the District had a lien on Heyward's property in the amount of $359.63 for unpaid water and sewer charges. This certificate was mailed to Heyward at 715 Irving Street, *N.W.*, but the lien was on property located at 715 Irving Street, *N.E.*

Also in June 1996, the District created the District of Columbia Water and Sewer Authority ("WASA") to be "an independent authority of the District government" and transferred WSA's functions to WASA. D.C.Code §§ 34–2202.02 & 2202.19 (2001). Pursuant to this transfer, the District's $359.63 lien on Heyward's property was assigned to WASA. *See* D.C.Code § 34–2202.07(e) (2001); § 34–2202.19(b).

From 1998 until 2007, WASA and its successors-in-interest conveyed and assigned the instant interest in unpaid water and sewer charges to several purchasers, most recently to Crusader.[1]

On May 24, 2007, DC Lien Acquisitions, LLC ("DC Lien"), Crusader's predecessor-

---

1. The instant lien has been conveyed and assigned a number of times.

First, on December 3, 1998, WASA sold and assigned its interest in liens for unpaid water and sewer charges to Breen Capital Services Corporation ("Breen"). This assignment included the lien on Heyward's property.

Second, in August 2003, Breen, with WASA's written approval, assigned its interest in the agreement to Strategic Lien Acquisitions, LLC ("Strategic"). This assignment included the instant lien.

Third, in September 2007, Strategic assigned its interest in the lien on Heyward's property to Crusader as Custodian for Strategic Municipal Lien Investments, LLC ("Crusader").

in-interest,[2] filed the instant complaint to foreclose Heyward's right of redemption as to the lien on Heyward's property. The complaint alleged that WASA had "sold and assigned to [p]laintiff [Crusader] the water and sewer liens" on Heyward's property. However, the complaint did not state that the property was sold at a foreclosure proceeding or public tax auction. On November 10, 1997, DC Lien moved to substitute Crusader as the plaintiff as its "successor-in-interest," and the trial court granted the motion.

Heyward filed a *pro se* answer arguing that the action should be dismissed because it was filed more than one year after the sale of the lien, and he contested the amount and existence of the lien. Heyward later argued that he never received notice of the certificate of delinquent charges because the address to which the certificate would have been mailed did not match the property address.

The District of Columbia, named as a defendant in the trial court pursuant to D.C.Code § 47–1371(b)(1)(G) (2001), argued that Crusader was not entitled to a foreclosure judgment because Crusader had not obtained a certificate of sale for Heyward's property, which would have been issued pursuant to a public tax sale in accordance with District law. D.C.Code § 34–2407.02(b). In response, Crusader eventually conceded that Heyward's property was not sold at a public tax auction, and that the "assignment . . . was pursuant to a purchase and sale agreement."

Ultimately, the trial court dismissed the action. First, it found that Crusader was not entitled to foreclose Heyward's right of redemption because Crusader wrongfully asserted that D.C.Code § 34–2407.02(a)(3) (2001) permitted Crusader to file its complaint under Chapter 13A of Title 47. Chapter 13 of Title 47 pertains to tax sales conducted in 2000 and earlier, while Chapter 13A pertains to tax sales conducted since 2001. D.C.Code § 47–1385 (2001).[3] The trial court noted that § 34–2407.02(a)(3) provides: "the Mayor, and not a private entity such as [Crusader], with authority to file an action to foreclose redemption under 'Subchapter IV of Chapter 13A of Title 47.'" Furthermore, pursuant to D.C.Code § 47–1385 (2001),[4] the trial court found that because WASA sold the instant lien before January 1, 2001,[5] Crusader should have filed its complaint under Chapter 13 of Title 47, and not Chapter 13A. The court also found that Crusader's lien was invalid because the original sale of the lien from WASA to Breen Capital Services Corporation (one of Crusader's predecessors-in-interest) did

---

2. Although the record does not provide specific dates as to when the DC Lien Acquisitions, LLC ("DC Lien")/Crusader merger and acquisition occurred, DC Lien filed a motion to substitute plaintiff, asserting that because DC Lien merged with Crusader, Crusader was now the successor-in-interest to the instant action. The court granted this motion.

3. Both chapters allow the District to sell real property with outstanding liens at a public auction, but the property owner must be notified of the delinquency. D.C.Code §§ 47–1313, –1341(a) (2001); *Langon v. Reilly*, 802 A.2d 951, 952–53 (D.C.2002).

4. D.C.Code § 47–1385 (2001) states, in pertinent part:

Chapter 13 [of this title] shall apply to any tax sale made or instituted, and any agreement executed between the District and any third party with respect to such sale, before January 1, 2001. This chapter shall apply to any tax sale made or instituted (or which could have been made or instituted), and any agreement executed between the District and any third party with respect to such sale, after December 31, 2000.

5. Crusader also concedes that WASA sold the instant lien before January 1, 2001.

not comport with the requirements of D.C.Code § 47–1303.04(d) (2001)[6] because the document assigning the lien to Breen Capital Services Corporation failed to state Heyward's name and the dollar amount due, including penalties and interest. Finally, relying on *Boddie v. Robinson*, 430 A.2d 519, 523 (D.C.1981), the trial court determined that the lien was void because Crusader failed to notify Heyward of his statutory right to redeem his property, in that the notice was sent to the wrong address.[7]

## II.

■ D.C.Code § 34–2407.02 (2001) governs the enforcement of liens for unpaid water and sewer charges, and it specifies the time line and procedures necessary to effectuate such a lien. Specifically, § 34–2407.02(a)(3) states the "Mayor may enforce the lien ... in the same manner that real property tax liens are enforced pursuant to Chapter 13 and Subchapter IV of Chapter 13A of Title 47." Additionally, § 34–2407.02(a)(4) provides that "real property may be sold for the unpaid water and sanitary sewer charges ... at a tax sale in accordance with the provisions for the sale of property for delinquent real property taxes pursuant to Chapter 13 of Title 47." If the property is sold, the purchaser will receive a certificate of sale, but the property owner has the right to

redeem the property within the time frame specified by statute. D.C.Code §§ 47–1304, –1306, –1360 (2001).

Here, there has been no showing that the property was ever offered at a public auction in accordance with the statute. In its brief, Crusader argues that "all of the liens ... subsequently sold and assigned to Strategic [Crusader's predecessor-in-interest] had previously been bid off at a tax auction in the District of Columbia." In response to that claim, the trial court, relying on several statutory provisions,[8] properly ruled that "assignments between private entities are not 'tax sales' as intended by [§] 47–1385." Crusader cites no contrary authority and there is nothing in the record that indicates any property transfer at a public auction. Moreover, Crusader concedes that there was no tax sale. For these reasons, the trial court correctly concluded that Crusader did not comport with the statutory requirements for enforcing its lien. Therefore, the trial court did not err in dismissing its complaint.

■ Crusader also contends that its lien on the property was valid, and the trial court erred in voiding it. We disagree. As already noted, the certificate of delinquent charges that gave rise to the lien was mailed to Heyward at 715 Irving Street, *N.W.*, but the lien was on property

6. D.C.Code § 47–1303.04(d) (2001), in pertinent part, states:

The assignment or sale and transfer of any tax liens and the right to receive amounts in respect thereof as provided by law shall be evidenced by a notarized certificate of the Director of the Department of Finance and Revenue or his or her duly authorized representative, which shall recite the full amount of such lien, including penalties, interest, and costs accrued as of the date of the assignment or sale and transfer of such tax lien, and naming the purchaser of the lien, the record owner,

and the square, lot, and street address of the related real property. The certificate of the assignment or sale and transfer shall be recorded in the Office of the Recorder of Deeds.

7. The trial court ruled: "The *Boddie v. Robinson* decision compels that this Court find that the test of strict compliance has not been met and, accordingly, the Court must invalidate the Lien upon which this action is founded."

8. *See* D.C.Code §§ 47–1332, –1342, –1346, –1348 (2001).

located at 715 Irving Street, *N.E.* In addition, the original sale of the lien from WASA to Breen Capital did not comport with the requirements of D.C.Code § 47–1303.04(d) because the document assigning the lien failed to state Heyward's name and the dollar amount due, including penalties and interest. While we have not expressly ruled that a lien is void when a party fails to strictly adhere to the statutory notice requirements, other jurisdictions have recognized this principle. *See Town of Pownal v. Anderson,* 728 A.2d 1254, 1259 (Me.1999) ("The failure to properly name a record owner of the property on the tax lien certificate rendered the lien void even when that unnamed owner had actual knowledge of the lien's existence."); *Cary v. Town of Harrington,* 534 A.2d 355, 358 (Me.1987) ("Because the tax lien certificates recorded by the Town do not strictly comply with the statutory requirements [the certificates failed to properly identify the property owner's name], the tax lien mortgages are void . . . .").

We are in full agreement with the authorities cited above. Crusader's failure to notify Heyward of his right of redemption is a significant statutory defect, which cannot be cured given our tenets of public policy and strict adherence to statutory compliance. A failure of this magnitude warrants the nullification of the lien itself. Thus, the trial court properly invalidated Crusader's lien on Heyward's property.

The judgment on appeal is

*Affirmed.*